COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

William A. BAGLEY, Respondent.

No. 6812.

United States Court of Appeals
First Circuit.

Heard Jan. 4, 1967.

Decided March 15, 1967.

Rehearing Denied April 5, 1967.

Edward Lee Rogers, Atty., Dept. of Justice, with whom Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., were on brief, for petitioner.

Arthur E. Bean, Jr., Manchester, N. H., for respondent.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Taxpayer, a consulting engineer, maintained his office at his home in Milford, New Hampshire. During the taxable years 1960 and 1961 he was employed from time to time by various power companies in the New England area on a per diem basis. On many of these days he left home early, ate breakfast on the way, ate lunch at work, and stopped to dine on the drive back. His employers' places of business were from thirty to seventy-five miles distant, and taxpayer normally reached home about ten P.M. The sole question is whether he can deduct the cost of these meals [1] as "traveling expenses (including the entire amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business". 1954 I.R.C. § 162 (a) (2).[2]

1. Taxpayer sometimes remained at his place of work overnight. The Commissioner does not question the propriety of deductions for meals and lodging on those occasions.

2. This section was amended in 1962, but in a respect not presently pertinent. Revenue Act of 1962, § 4(b), 76 Stat. 960.

For the 45 years that this provision has been on the books in substantially its present form the Commissioner has sought to apply a rule of thumb which, in general, has found favor with the Tax Court. See, e. g., Al J. Smith, 1960, 33 T.C. 861; Louis Drill, 1947, 8 T.C. 902. Some other courts have been critical. See, e. g., Hanson v. Commissioner, infra; Correll v. United States, infra. We cannot find, however, that these courts have substituted anything better. Rather, we believe that to this area of almost unlimited factual variations their admittedly subjective approach brings neither clarification nor ease of application nor, even, overall fairness.

The Commissioner's rule was originally known as the overnight rule. Travel did not qualify unless the taxpayer was away from home overnight.[3] As a result of the decision in Williams v. Patterson, 5 Cir., 1961, 286 F.2d 333, which the Commissioner accepted, this became known as the necessary sleep or rest rule—a trip long enough to require interruption for rest during the day is equivalent to being away overnight.[4] We in no way disagree with *Williams*. It marked, however, the beginning of a broader attack on the rule. In Hanson v. Commissioner, 8 Cir., 1962, 298 F.2d 391, the taxpayer was in the construction business. He was employed contemporaneously at several different job sites at substantial distances from his home.

He normally checked in at his office in the morning, and then visited the various jobs, usually returning late at night. The court concerned itself principally with ruling that the overnight rule without legal basis. Having determined this, it then decided the case on the ground that Williams v. Patterson justified the deduction of the lunches and dinners "albeit the expense is 'personal in nature.'" Id. 298 F.2d at 397. The court did not discuss the factual complications involved or, apparently, note that Williams v. Patterson, where there was a substantial rest period involved, was a very different case.[5]

In the case at bar the Tax Court decided to follow *Hanson*. One judge, in concurring on special grounds, expressed what seems to us a poignant regret, that neither the *Hanson* decision nor the Tax Court in the present case had offered any guiding principles to take the place of the Commissioner's rule.

The most recent blow against the Commissioner's rule was struck in Correll v. United States, 6 Cir., 1966, 369 F.2d 87, 90. In permitting a traveling salesman who returned nightly for dinner to deduct his breakfast and lunch on the road, the court conceded that "the rule adopted by Appellate Courts may not always work satisfactorily," but concluded that "the remedy lies with Congress and not with the judiciary."

3. See discussion in Kenneth Waters, 1949, 12 T.C. 414, 417. Allan L. Hanson, 1960, 35 T.C. 413, rev'd, Hanson v. Commissioner, 8 Cir., 1962, 298 F.2d 391.

4. In *Williams* the taxpayer was a railroad conductor. He left his home in Alabama every morning at about 6:45 A.M. and boarded a train which arrived in Atlanta at 12:15 P.M. He was then off duty until 6:15 P.M., at which time he departed on the return trip and arrived home at about midnight. During the stopover in Atlanta the taxpayer regularly had lunch at a hotel, rented a room and slept for several hours, and had dinner. The question at issue was whether or not his rest was "necessary," since at that time Rev.Rul. 54–497, 1954–2

Cum.Bull. 75, 78, permitted a deduction to a railway employee who was released from duty to obtain "necessary sleep." The Commissioner contended that such rest was only necessary when required by the employer. The court rejected this to rule that when it was reasonable for the employee, due to the hours of his employment, to seek rest during his hours off a deduction would be permitted. The Commissioner acquiesced in this holding in Rev.Rul. 61–221, 1961–2 Cum.Bull. 34. See also I.T. 3395, 1940–2 Cum.Bull. 64.

5. The court also relied upon our case of Chandler v. Commissioner, 1 Cir., 1955, 226 F.2d 467, which, for reasons pointed out infra, n. 11, we believe was wrongly decided.

With all respect, we suggest that the Commissioner's rule has worked adequately for many years, and that the remedy which is needed is to correct its unsettling by the judiciary itself. Furthermore, we believe that the so-called "rule adopted by Appellate Courts" is not a rule at all, and not even a guide.

We start with the principle that both travel and meals away from home are not deductible if they are personal, as distinguished from business, expenses. 1954 I.R.C. § 262. If a taxpayer chooses to live in one locality and work in another, normally his travel from one to the other is regarded as being for his personal convenience. Commissioner v. Flowers, 1946, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203.[6] It is equally clear that a commuter cannot deduct his lunch. Cf. Fred M. Osteen, 1950, 14 T.C. 1261. But cf. Emmert v. United States, S.D.Ind., 1955, 146 F.Supp. 322. Under such circumstances it would seem unfair to allow a deduction for lunch to a man whose business requires him to spend his eight hour day on the road, even though in a sense he is traveling. We have held against such a taxpayer. Amoroso v. Commissioner, 1 Cir., 1952, 193 F.2d 583, cert. den. 343 U.S. 926, 72 S.Ct. 759, 96 L.Ed. 1337 (traveling salesman). Nor do we suppose, if a commuter were required to work late at his place of business, that any court would distinguish between his lunch and his supper. Cf. Jerome Mortrud, 1965, 44 T.C. 208; Fred G. Armstrong, 1965, 43 T.C. 733; Louis Drill, 1947, 8 T.C. 902.

█ While, as has been pointed out, there are certain travel and other expenses of a purely personal nature, the manifest statutory purpose is to permit deductions when business activities require duplication. Lodging away from home may well be all extra expense.[7] However, even though a meal away from home may be more expensive, presumptively it is not all added cost. And, in fact, prior to the enactment of what is now section 162(a)(2) in 1921, the Commissioner had promulgated a regulation which permitted the deduction of only that part of the expenses for meals and lodging incurred while traveling "in an amount in excess of any expenditures ordinarily required for such purposes when at home." Treas.Reg. art. 292 (1920 ed.). The difficulties involved in calculating the "excess" under this regulation proved so onerous that the Treasury itself asked Congress to grant a deduction for the "entire amount" of such expenditures for meals and lodging.[8] Accordingly section 214(a)(1) of the Revenue Act of 1921, ch. 136, 42 Stat. 227, for the first time contained as a subcategory of ordinary and necessary business expenses the language that is now section 162(a)(2). Compare section 214 of the Revenue Act of 1918, ch. 18, 40 Stat. 1057. Hence taxpayers who incur meal expenses while traveling away from home now receive a tax windfall in that, unlike taxpayers who pay for meals while "at home," they are permitted to deduct some expenses that are incontestably "personal" as that term is used in section 262, i. e., that portion of their meal expenses that they would have incurred had they not been traveling.

This codified accounting convenience intensifies the windfall which accrues to taxpayers like Correll and Hanson as against such taxpayers as Osteen and Amoroso. It may well be the reason why

---

6. A taxpayer who has more than one place of business could not choose to live at all of them. In that event at least some of the travel must be a business necessity. Cf. Crowther v. Commissioner, 9 Cir., 1959, 269 F.2d 292; see Chandler v. Commissioner, 1 Cir., 1955, 226 F.2d 467, discussed infra, n. 11.

7. But cf. James v. United States, 9 Cir., 1962, 308 F.2d 204, where taxpayer, an unmarried traveling salesman, lived in hotels the year around. Properly, no deduction was allowed, on the theory that he had no "home" to be away from.

8. See Statement of Dr. T. S. Adams, Tax Advisor, Treasury Department, Senate Hearings on Internal Revenue, September 2 and 13, 1921 (Confidential Committee Print, subsequently released for publication), pp. 50, 234–35.

the Commissioner sought to invoke the overnight rule. In any event, we think it a good reason to do so. We see no justification for allowing salesman Correll two meals, and salesman Amoroso none. Nor would we give Amoroso one and commuter Osteen none. Equally, we see no reason, to take a frequently referred to hypothetical, why a man who makes a quick trip to Washington, missing neither breakfast nor dinner at home, should be allowed his lunch merely because he is traveling more miles than Amoroso, the salesman who travels locally. The courts in *Hanson* and *Correll* do not discuss this inevitable question. We think, at best, that all they do is to push the dividing line somewhere else, with no avoidance of the ultimate necessity, and difficulty, of drawing it. At worst, they make the drawing of it considerably harder.[9]

 We believe that fairness to the greatest number of people, and at the same time a practical administrative approach which will not permit every meal-purchasing taxpayer to take pot luck in the courts, is to accept the Commissioner's sleep or rest rule. If in some in-stances it be thought illogical, it is not uninteresting to note that the very circuit which has been relied on to justify a substantial assault on the Commissioner's rule is the one which has most succinctly pointed out that fairness and administrative consistency in this area are more important than the total pursuit of logic. See Steinhort v. Commissioner, 5 Cir., 1964, 335 F.2d 496, 503–505.

Nor do we find the Commissioner's rule wide of the mark as a matter of statutory construction. Admittedly all travel is not "away from home." Not only have the courts recognized this even when travel was not strictly commuting, Clarence J. Sapp, 1961, 36 T.C. 852, aff'd per curiam, 5 Cir., 309 F.2d 143, but, were the contrary interpretation given, in qualifying travel as "away from home" the statute would be redundant. Since a line must be drawn somewhere, it seems not unreasonable to say that the test of whether travel is away from home is whether it is so extensive as to require "lodging," viz., that "meals and lodging" be read in the conjunctive. This construction arguably finds some historical corroboration.[10] We believe, in any

---

9. It is not at all clear, for example, whether the court in *Hanson* would be prepared to grant a deduction to Amoroso. See 298 F.2d at 397.

10. The Treasury Regulation in response to which the deduction for the entire amount of travel expenses was originally passed consistently used language like "railroad fares, and meals and lodging" as though meals and lodging were to be read together. Had it been intended that the words should be read disjunctively the phrase "railroad fares, meals, and lodging" would have been more appropriate. Treas.Reg. art. 292 (1920 ed.). Likewise, all versions of the statute since its enactment in 1921 have used the terms in conjunction in permitting the deduction of the "entire amount" expended on them. If this is not intended to suggest a connection between them it makes little sense, since even under the Commissioner's original regulation permitting the deduction of only the excess of the "entire amount" of expenditures, lodging would have been ordinarily deductible because it was a duplicated expense. The only case in which this would not hold true would be where one's abode was sufficiently permanent to constitute a "home" and yet cost less to maintain when the taxpayer was away. It would seem that such a situation is sufficiently unlikely to occur, or if it does occur sufficiently unlikely to amount to any substantial avoidance of duplication, to indicate that it was not what Congress was primarily concerned with treating when it drafted the statute in question. Accordingly, if this analysis is correct the purpose of linking meals and lodging, rather than merely specifying the deduction of the "entire amount" of meals alone, is to indicate that a deduction is to be granted when expenses for both are incurred.

Admittedly when Congress enacted section 62(2) (B) in 1954, 1954 I.R.C. § 62 (2) (B), providing for the deduction of travel expenses from gross income, the wording "expenses of travel, meals, and lodging" was used. However, the committee reports on that section also contain the only specific indication that Congress was aware of and accepted the Commissioner's interpretation of the statutory language. They state, "At present, busi-

event, that it is a reasonable compromise in what seems otherwise an impossible situation.

It would be an insuperable objection to the sleep or rest rule if not merely meals, but also business transportation costs, were deductible only if incurred in connection with lodging. However, in spite of the fact that section 162(a) (2) links the deduction of travel expenses with the deduction of meal costs, such correlation has not been uniformly required. E. g., Summerour v. Allen, M.D.Ga., 1951, 99 F.Supp. 318; Joseph M. Winn, 1959, 32 T.C. 220. In some circumstances transportation may be an ordinary and necessary expense under the general provisions of section 162. E. g., Steinhort v. Commissioner, 5 Cir., 1964, 335 F.2d 496; Clarence J. Sapp, supra. Cf. I.R.C. § 62 (2) (C). But cf. Crowther v. Commissioner, 9 Cir., 1959, 269 F.2d 292; Rice v. Riddell, S.D.Calif., 1959, 179 F.Supp. 576.[11] The fact that some transportation costs are deductible even where meals would not be not only removes the necessity of making a liberal interpretation of section 162(a) (2), but in itself suggests that "travel away from home" with it specific inclusion of meals and lodging, means travel in a substantial sense and not a diurnal round starting and ending at home.

■ On this basis the present taxpayer is not entitled to the deduction. Nor do we find it an answer to say that had he chosen to stay overnight, instead of coming home late, the result would have been otherwise. Not only in a rule of thumb, but in any application of principles there has to be a dividing line, and in as complex an area as this one the line is bound to be indistinct. It can become totally lost by talking equivalents.

ness transportation expenses can be deducted by an employee * * * only if they are reimbursed by the employer or if they are incurred while he was *away from home overnight.*" S.Rep. No. 1622, 83d Cong., 2d Sess., 9, 169, H.R. Rep. No. 1337, 83d Cong., 2d Sess., 9, A19. (Ital. suppl.) U.S.Code Cong. & Admin.News 1954, p. 4638. Therefore it seems reasonable to conclude, at the least, that the change in phraseology was not intended to alter the previous meaning of section 162 (a) (2).

11. A decision involving transportation only is our case of Chandler v. Commissioner, 1 Cir., 1955, 226 F.2d 467. There taxpayer had two jobs, in two different places. We held that transportation to one was commuting and not deductible, but that the cost of traveling to the second could be deducted. Under ordinary circumstances this would be a sound result—the cost of transportation to the second job would seem a necessary and proper business expense. Steinhort v. Commissioner, supra. The difficulty is that taxpayer had taken the standard deduction, which at that time included, and therefore prevented additional itemization of, all "necessary and proper" business expense. Accordingly, Chandler had, in effect, received this travel deduction, if it were to be so categorized. Consequently, in order to permit taxpayer to recover, the court had to hold that travel to this second job, although, strictly, it was no greater in mileage or hours than commuting to the first, was "travel away from home," this being a deduction not included in the standard deduction.

We must agree with the Commissioner that this was an instance of a hard case making bad law. At that time the 1939 Code made a totally arbitrary distinction between employee taxpayers who incurred transportation expenses for which they were not reimbursed and those who were reimbursed. 1939 I.R.C. §§ 22(n), (2), (3). The former could deduct transportation expenses from gross income and take the standard deduction as well only if they were travel expenses incurred away from home on business, while the latter could take both deductions for all legitimate business transportation expenses. Additionally, self-employed taxpayers could also take both deductions. 1939 I.R.C. § 22(n) (1). Possibly because such a distinction between similarly situated taxpayers was grossly discriminatory the court strained to construe the transportation as involving travel away from home in order to rectify the inequity. This discrimination was eliminated by the enactment of section 62(2) (C) of the 1954 I.R.C. and the transportation expenses incurred by Chandler would today be deductible from gross income under this section. However, we must conclude that the decision in Chandler is incorrect as a guide to the construction of section 162(a) (2). Compare Kenneth Waters, 1949, 12 T.C. 414 (dissenting opinion).

We can think of no sharper place to draw the line, and since we also think of no better one, we accept what has long been the Commissioner's.

The decision of the Tax Court is vacated and the cause remanded for further proceedings.